OPINION
Defendant-appellant Charles Zeller appeals from his bench trial convictions for operating his motor vehicle while under the influence of alcohol, with an unlawful breath alcohol concentration, and weaving.
This is an unusual but simple case. The only fact disputed at trial was whether defendant was the person who committed the offenses. Defendant maintained that his vehicle was stolen by a drunken impostor. The prosecution's theory of the case was that defendant was in fact the person arrested and charged with the crimes.
The prosecution presented testimony from two police officers concerning the arrest. Officer Walker testified that on April 4, 1998, he stopped defendant because he observed him weaving. Defendant produced his driver's license and stated that his name was "Charles Zeller." Walker arrested defendant after he failed a series of field sobriety checks. Officer Gerding was present on the scene and also observed the arrest. In court each officer specifically identified defendant as the person arrested.
Officer Walker testified that he conducted the booking and was in the presence of defendant for approximately one and one-half hours. Walker did not take either defendant's photograph or his fingerprints during the booking because the police files contained two photographs from defendant's prior drunk driving arrests in 1993 and 1996. Walker specifically stated that the photographs resembled defendant.
Booking records from defendant's arrests in 1998, 1996, and 1993 were introduced into evidence. The forms reveal that suspects sign an inventory of personal property when it is taken from them at the time of arrest and a second time when it is returned to them at the time of release. The booking records are signed six times with the name "C.R. Zeller." The administrative license suspension form, BMV Form 2255, and municipal court personal recognizance form are also signed "C.R. Zeller."
Defendant testified and presented alibi testimony from a longtime friend and co-worker. Steven Horvath testified that he was with defendant at Henry's Bar Grill in Brook Park until 1:30 a.m., six minutes after the arrest by Berea police. Horvath stated defendant and he bought each other a drink. Horvath said that when he left the bar defendant was still there. Horvath knew the time was 1:30 a.m. because he "remember[ed] looking at the clock when I got home." Defendant did not mention to him that evening that his car had been stolen. According to Horvath, the two never subsequently discussed that defendant had been arrested.
Defendant testified that, earlier in the evening, he discovered the hood had been "popped" open on his vehicle. The car had "no power whatsoever." He obtained the telephone number for what he thought to be Ford Roadside Assistance from another co-worker and called to request that his vehicle be towed to a local dealership. At one point he stated that the roadside assistance service told him to leave the doors unlocked with the ignition key on the visor. In any event, he said that when he returned to get his wallet out of the glove compartment the vehicle was gone.
After his Friday evening shift was over, defendant went across the street to Henry's Bar Grill. An acquaintance who was going to give him a ride home left without defendant at 2:00 Saturday morning. A stranger gave him a ride home later that morning.
Defendant did not learn that his car had been "stolen" until Monday. Ford Roadside Assistance had no record of a call from defendant on Friday evening. Defendant stated he assumed the towing service had towed the vehicle. He had no reason to follow up on the telephone call with the local dealership because he believed no work would have been done on the car during the weekend. When he called Brook Park police on Monday, he was told that the vehicle was in the custody of the Berea police.
The trial judge found defendant guilty of all three offenses. Defendant timely appeals, raising two assignments of error challenging the sufficiency and the manifest weight of the evidence to support his convictions.
Defendant's first assignment of error follows:
 THERE WAS INSUFFICIENT EVIDENCE WITH WHICH TO SUPPORT THE TRIAL COURT'S FINDING OF GUILTY WITH RESPECT TO ANY OF THE CHARGES.
This assignment lacks merit.
Defendant contends there was insufficient evidence for the trial court to find that he was the person who committed the three traffic offenses.
The Ohio Supreme Court has summarized the standard governing claims that a conviction is not supported by sufficient evidence, as follows:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two. After reviewing the record in compliance with this standard, we find defendant failed to show that his convictions were not supported by sufficient evidence.
When viewed in the light most favorable to the prosecution, as we are required, the record shows that two police officers identified defendant as the person who committed the traffic offenses. Officer Walker specifically testified that he observed defendant for a period of approximately one and one-half hours during booking. He stated the reason he took no photograph of defendant was that the police files already contained a photograph that matched his physical appearance at the time of his arrest.
Identification testimony by crime victims, who have had a much more limited opportunity for observation, is routinely found to be sufficient to identify the defendant as the offender even though there are no supporting photographs or fingerprints. The standards for reviewing the sufficiency of the evidence do not dictate a contrary conclusion when the identification is made by two police officers as in the case at bar.
Accordingly, defendant's first assignment is overruled.
Defendant's second assignment of error follows:
 APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE ON EACH OF THE CHARGES.
This assignment lacks merit.
Defendant argues the trial court's finding that he was the person who committed the three traffic offenses is against the manifest weight of the evidence. He also argues, for the first time on appeal, that the testimony concerning his .202 breathalyzer test results should not have been admitted.
The Ohio Supreme Court has summarized the standard governing claims that a conviction is against the manifest weight of the evidence, as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction.
State v. Thompkins (1997). 78 Ohio St.3d 380, 387 (quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175.) After reviewing the record in compliance with this standard, we find defendant has failed to show that his convictions are against the manifest weight of the evidence.
The parties' versions of the events sharply conflicted on the central dispute: whether defendant or a drunken impostor was driving his car when the offenses were committed. Resolution of this dispute depended principally on the credibility accorded to the testimony.
To support the prosecutor's case, two officers identified defendant in court, as well as at the time of his arrest, on the basis of a photograph defendant admitted was taken of him. Defendant also admitted to the authenticity of signatures on prior booking forms. In this case, the signatures on the booking forms, which officer Walker observed defendant sign, strongly resembled these prior exemplars.
Defendant's version of events included murky details and a weak alibi. Horvath testified defendant was present and drinking with him at the bar and Horvath left first. He could not say precisely when defendant left because Horvath did not look at a clock. He offered no persuasive reason, however, why, months later when contacted by defendant's lawyer to provide alibi testimony, he would remember the time he left the bar. Horvath's testimony that he spoke to defendant, his friend of eighteen years, about the "theft" of the car, but not the criminal charges, strained credulity.
Similarly, defendant's story about attempting to have his car towed had gaps. Defendant admitted that Ford Roadside Assistance had no record of such a call. Defendant testified he made only two trips to his car in the Ford plant parking lot: the first time, he said, he discovered the problem, and the second time the car was gone. This story, however, would have required a third trip to leave the keys on the visor with the car unlocked as the service presumably requested. Although defendant stated the car had no power whatsoever at the time of the service call, the vehicle ran, without any repairs having been made, when the police returned it to him. Defendant also claimed that a total stranger gave him a ride home from the bar, another detail of the story that could not be corroborated.
Defendant emphasizes that the booking form completed by Officer Walker incorrectly listed the color of his hair and eyes. Walker stated, however, that he completed the form by taking these items of information about defendant from the computerized LEADS printout maintained by the BMV. This information from the LEADS printout, which was admitted into evidence, was reported by defendant when he last obtained his license.
We note that the trial judge had a superior opportunity to observe the witnesses and their demeanor when evaluating their credibility and the weight to be given their testimony. E.g.,State v. Woods (1985), 25 Ohio App.3d 35, 38. Under the circumstances, we decline to find that defendant's convictions are against the manifest weight of the evidence.
Defendant also argues, for the first time on appeal, that the prosecution did not lay a proper foundation for admitting the result of the breathalyzer test. Defendant complains the prosecution presented no evidence concerning which officer performed the test, whether the officer was properly trained, or whether the device was properly calibrated and functioning.
The Ohio Supreme Court has held that such arguments are waived by failing to raise them in a pretrial motion to suppress. Statev. French (1995), 72 Ohio St.3d 446, syllabus paragraph one, provides in pertinent part as follows:
 Because Crim.R. 12 (B) (3) applies to all charges under R.C. 4511.19, a defendant charged under R.C. 4511.19 (A) (1) through (4) who does not challenge the admissibility of the chemical test results through a pretrial motion to suppress waives the requirement on the state to lay a foundation for the admissibility of the test results at trial. * * *
The record shows that defendant failed not only to file a pretrial motion to suppress, but also to object at trial. Thus we deem any claim of error to be waived.
Accordingly, defendant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Berea Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J., and MICHAEL J CORRIGAN, J., CONCUR.
 ______________________ DIANE KARPINSKI JUDGE